UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAUREL ROSEN,

           Plaintiff,

     v.

AT&T MOBILITY LLC,

           Defendant.

No. C07-360RSL

ORDER GRANTING
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendant's Motion for Summary Judgment." Dkt. #24. Defendant argues that, as a matter of law, plaintiff cannot show that promises of specific treatment in specific situations altered her status as an "at-will" employee. For the reasons discussed below, the Court GRANTS defendant's motion for summary judgment.

**I. Factual Background**

On or about September 17, 1999, defendant hired plaintiff to work as an upper-level manager within its Information Technology ("IT") department. The offer of employment stated, in relevant part:

> As a condition of your employment, you will be required to sign the AT&T Wireless standard employment agreement attached. Employment at AT&T is at-will. Either you or the company may terminate the employment relationship at any time, for any reason, with or without cause.

Dkt. #25 (Perisho Decl.), Ex. B. The third paragraph of the attached employment agreement read, in bold print:

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -1-

> I understand and agree that my employment with Company is at will and for no specific length of time. This means that I may resign my employment at any time, without any reason and without notice. This also means that Company may terminate my employment at any time, for any or no reason, with or without cause, and with or without notice. No one at Company, other than an authorized Officer of Company, and then only in writing as set forth in Section 11 of this Agreement, has the authority to alter the at-will status of my employment relationship with Company.

Id. at Ex. C. Plaintiff signed both the letter and the employment agreement, indicating that she had read, understood, and agreed to the specified terms. Id. at Ex. B-C. In her deposition testimony, plaintiff acknowledges that she read and understood the employment agreement. Id. at Ex. A (Rosen Dep.), 31:24-32:9. Plaintiff further acknowledges that her at-will employment status was never altered in writing by an authorized officer of the company and that she was an at-will employee throughout the time she was employed by defendant. Id. at 34:3-5, 38:14-17, 42:18-21. Plaintiff continued to be employed by defendant until early 2004, when the company informed her that her position at the company had been eliminated. See Dkt. #40, Ex. D (Notice of Position Elimination).

After defendant terminated her employment, plaintiff filed this lawsuit alleging that defendant made, and subsequently breached, promises of specific treatment in specific situations. Dkt. #4 (Complaint), ¶4. According to plaintiff, these breaches proximately caused her wrongful termination. Id. Her claim rests on a limited exception to at-will employment created under Washington law, which provides that an employer's written promises of specific treatment in specific situations can modify an employee's otherwise at-will employment status. See Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 230 (1984). The alleged promises, each of which will be discussed in greater detail below, are as follows: (1) that defendant would complete its Performance Plan & Review process prior to terminating plaintiff for performance-based reasons; (2) that defendant would complete progressive discipline procedures prior to terminating plaintiff for performance-based reasons; (3) that plaintiff would not be subject to a "skills assessment"

1 in late 2003, and that certain procedures would be followed if she were subject to such an
2 assessment; and (4) that plaintiff would be eligible to apply and be considered for other
3 positions within the company after she had been identified for layoff.

## II. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy, 68 F.3d at 1221.

## III. Discussion

**A. Employment Under Washington Law**

Under Washington law, employment is considered "at-will" if the employment contract does not specify the duration of the employment relationship. Thompson, 102 Wn.2d at 223. As indicated by plaintiff's employment agreement, this means that the employee or the employer may terminate the employment relationship at any time, with or without cause. See id. Washington law recognizes several exceptions to the general at-will employment rule, including circumstances in which an employer makes a promise of "specific treatment in specific situations" that alters the at-will employment

1  relationship.  See id. at 233.  To state a cause of action under the so-called Thompson
2  exception, the employee must prove:  "(1) that a statement (or statements) in an employee
3  manual or handbook or similar document amounts to a promise of specific treatment in
4  specific situations, (2) that the employee justifiably relied on the promise, and (3) that the
5  promise was breached."  Korslund v. Dyncorp Tri-Cities Services, Inc., 156 Wn.2d 168,
6  185 (2005).  Not all statements contained in employee handbooks or manuals amount to
7  promises of specific treatment, however.  "[P]olicy statements as written . . . [may]
8  merely be general statements of company policy and, thus, not binding."  Thompson, 102
9  Wn.2d at 231.  Under Thompson, language contained in the employee handbook, manual,
10 or similar document must be sufficiently specific to create an enforceable obligation, and
11 that obligation must be triggered by a specific situation.  See id.

12 **B.      Justifiable Reliance**

13         As a threshold matter, defendant argues that the express at-will provision of
14 plaintiff's signed employment agreement precludes her reliance on company promises as
15 a matter of law.  The Washington Supreme Court has rejected this argument.  See
16 Korslund, 156 Wn.2d at 187-88. ("It would be inconsistent with Thompson and it's
17 progeny to conclude that once an application containing an at-will provision is signed, the
18 employer is thereafter free to make whatever promises it wishes to make without any
19 obligation to carry them out.").

20         The provisions of plaintiff's employment agreement are relevant to the issue of
21 plaintiff's justifiable reliance, however, and the Court has considered the express at-will
22 provisions of the agreement in the context of each alleged promise.  The Court finds that
23 none of the alleged promises purports to alter the terms of the employment agreement,
24 nor do they suggest that the at-will provision of the agreement would not be enforced.
25 See also Dkt. #25, Ex. A (Rosen Dep), 38:14-17.  Therefore, plaintiff's justifiable
26 reliance depends on her ability to show that the alleged promises are consistent with the
27 terms of her employment agreement, which required that any alterations be in writing and
28

1  signed by plaintiff and an authorized officer of the company.  See id. at Ex. B

2  (Employment Agreement), ¶3, 11.  Plaintiff has not identified a promise that complies

3  with these terms.

4        Plaintiff's sworn testimony that she considered herself to be an at-will employee

5  also weakens her claims of justifiable reliance.  Dkt. #25, Ex. A (Rosen Dep.), 42:18-21.

6  On April 2, 2008, plaintiff submitted a "Declaration in Support of Plaintiff's Opposition

7  to Defendant's Motion for Summary Judgment" that attempts to recharacterize plaintiff's

8  deposition testimony about her at-will employment status.  Dkt. #41, ¶¶2, 4-6.  Plaintiff

9  cannot create a jury question by providing the Court with a declaration that contradicts

10 statements she made in her sworn deposition.[1]  See Block v. City of Los Angeles, 253

11 F.3d 410, 419 n.2 (9th Cir. 2001).  Although plaintiff does not believe that her

12 understanding of her at-will employment status "is inconsistent with the claims [of

13 promises of specific treatment] made in this case," she is mistaken.  See Dkt. #41, ¶6.

14 Plaintiff's claim for wrongful termination depends on her employer making promises of

15 specific treatment in specific situations that modified her otherwise at-will employment

16 status.  Plaintiff's deposition testimony suggests that she understood defendant's right to

17 terminate her employment for any reason or no reason, with or without warning.  The

18 inconsistency between her claims of reliance and her understanding of her at-will

19 employment status undermines each of plaintiff's claims and warrants summary judgment

20 for defendant.

21 **C.**     **Promises of Specific Treatment in Specific Situations**

22     **1. Performance Plan and Review Process**

23     While plaintiff was employed by defendant, she participated in the company's

---

[1] Furthermore, Local Rule 7(d)(3) requires "any opposition papers [to] be filed and served not later than the Monday before the noting date" (emphasis added).  Defendant's motion for summary judgment was noted for Friday, March 28, 2008, which required plaintiff to file any opposition papers with the Court by Monday, March 24, 2008.  The declaration filed on Wednesday, April 2, 2008, is therefore stricken as untimely.

Performance Plan and Review ("PP&R") process.  Generally, the process involved employee-supervisor meetings at the beginning, middle, and end of the year.  See Dkt. #38, P. Ex. 48 (Colleague Guidebook); Dkt. #27 (Redling Decl.), ¶3.  At the beginning of the year, an employee and her supervisor established goals in the form of a "performance plan."  The mid-year and year-end reviews evaluated how well the employee had achieved those goals and how well the employee had performed overall.  See Dkt. #38, P. Ex. 48 (Colleague Guidebook); Dkt. #27 (Redling Decl.), ¶3.

Plaintiff agrees that she remained an at-will employee throughout her time with the company and that defendant retained the authority to eliminate her position without completing the PP&R process.  Dkt. #25, Ex. A (Rosen Dep.) 120:2-5.  She asserts, however, that she relied on defendant's promise "to use the PP&R Process with regard to significant employment decisions, including placement and discharge for performance problems."  Response at 1.  Plaintiff contends that defendant breached its promise by failing to complete a 2003 year-end PP&R review before it terminated her employment.

The precise reason for plaintiff's termination and whether she did in fact receive a 2003 year-end PP&R review are contested issues of fact.  Nevertheless, even if the facts are viewed as plaintiff suggests–that she was terminated for performance-based reasons without receiving the benefit of a PP&R review–plaintiff has not shown a written promise that a PP&R review would be completed before termination of employment, performance-based or otherwise.

Plaintiff does not claim that the PP&R process was a necessary prerequisite to performance-based terminations.  Instead, she describes the process as "the commitment of the company to keep no secrets between the employee and itself regarding what they want from them or how they're doing.  And that information, which isn't a secret, is used to make determinations."  Dkt. #25, Ex. A (Rosen Dep.), 119:14-18.  There is a critical distinction between a process that may be used to make "determinations" and a process that is necessary to make employment determinations.  The "Corrective Action"

1  subsection of defendant's employee handbook, the "Colleague Guidebook," explicitly
2  reserves defendant's right "in all situations involving performance problems . . . to
3  impose any form of corrective action it believes appropriate, up to and including
4  termination of the employment relationship."  Dkt. #38, P. Ex. 48 (Colleague
5  Guidebook).  The PP&R process is not listed among defendant's "Corrective Action"
6  policies.  See id.  Nothing in the Colleague Guidebook or the PP&R documents
7  themselves suggests a necessary link between the PP&R process and employment
8  determinations, including termination.  See id.
9         The conspicuous absence of language indicating a relationship between
10 termination and the PP&R process stands in stark contrast to other cases in which courts
11 have found a possible promise of specific treatment in specific situations.  For example,
12 this Court found that an employer may have created a promise of specific treatment by
13 stating that "[a]ll employees who receive discipline, including termination . . . are eligible
14 to participate" in the company's Guaranteed Fair Treatment Procedure ("GFTP").  See
15 Ritchie v. Federal Express Corp., No. 04-1753, 2007 U.S. Dist. LEXIS 28350, at *15-16
16 (W.D. Wash. Apr. 16, 2007) (emphasis added).  The company's employee handbook
17 further emphasized that "[a]n employee's right to participate within the guidelines of the
18 [GFTP] process is guaranteed" and that "[t]he GFTP/EEO process is the exclusive
19 remedy for all disputes or work-related complaints arising from an employee's
20 employment or termination from employment."  Id. at *16, 18 (emphasis added); see also
21 Burnside v. Simpson Paper Co., 123 Wn.2d 93, 105 n.8 (1994) (handbook stated that
22 employee could be immediately terminated "if previous warnings have been given and
23 employee has had the opportunity to resign"); Swanson v. Liquid Air Corp., 118 Wn.2d
24 512, 523-24 (1992) (handbook listed circumstances in which immediate termination
25 would be appropriate and then provided that "[i]n all other instances of misconduct, at
26 least one warning shall be given").  In this case, defendant's Colleague Guidebook neither
27 mentions the PP&R process in the context of termination nor establishes that the PP&R
28

1 process will be the company's exclusive method of performance evaluation.  Given this
2 contrast, the PP&R process is more appropriately characterized as a statement of general
3 company policy, not a promise of specific treatment when an employee is facing
4 termination.

5       Plaintiff has presented testimony suggesting that the PP&R process was considered
6 "mandatory" within the IT department, although she admits that the practice may not
7 have been mandatory in other divisions of the company.  For purposes of summary
8 judgment, the Court accepts that the PP&R process was a standard practice within the IT
9 department and that plaintiff relied on an atmosphere of job security created by the
10 process.  Even so, "general policies and subjective beliefs" do not create a promise of
11 specific treatment upon which plaintiff could justifiably rely.  See Hill v. J.C. Penney,
12 Inc., 70 Wn. App. 225, 235 (1993); see also Bulman v. Safeway, 144 Wn.2d 335, 343
13 (2001) ("It is not enough for a plaintiff in a wrongful discharge case to simply be able to
14 rely upon the general atmosphere of his or her work place . . . for it is very specific
15 promises that create such an atmosphere–the atmosphere itself does not create
16 promises.") (emphasis in original).  In the absence of a written promise that the PP&R
17 process would be completed before termination, plaintiff's subjective belief that the
18 PP&R process modified her at-will employment status is not justifiable as a matter of
19 law.

20       **2. Performance Improvement Plan and Progressive Discipline**

21       Plaintiff also asserts that defendant breached its promise to complete a
22 Performance Improvement Plan ("PIP"), a form of progressive discipline, prior to
23 terminating her employment for performance-based reasons.  Plaintiff has presented no
24 evidence of a written promise to this effect.  Absent evidence of a written promise of
25 progressive discipline prior to termination, oral promises are "insufficient to establish an
26 enforceable promise" under Thompson.  See Drobny v. Boeing, 80 Wn. App. 97, 107
27 (1995); see also Lawson v. Boeing Co., 58 Wn. App. 261, 264-65 (1990) (upholding
28 summary judgment for defendant where plaintiff did not present written promises of

specific treatment).

In support of her claim that defendant made a written promise of progressive discipline, plaintiff has identified a paragraph of the Colleague Guidebook that lists situations for which "immediate dismissal is appropriate." See Response at 6; Dkt. #38, P. Ex. 48 (Colleague Guidebook). The list includes serious offenses such as theft, drug use, insubordination, possession of a firearm or weapon on the job, and harassment of another employee. Performance-based problems are not included in the list. See Dkt. #38, P. Ex. 48 (Colleague Guidebook). Based on this language, plaintiff argues that the Guidebook "lists only a discrete set of situations where the PIP and progressive discipline policy <u>would not</u> apply and <u>immediate</u> termination would be appropriate." Response at 6 (emphasis in original). Her assertion mischaracterizes this section of the Guidebook, which does not discuss PIP or an equivalent progressive discipline policy. See Dkt. #38, P. Ex. 48 (Colleague Guidebook). In fact, defendant's progressive discipline policies are not discussed in any section of the Guidebook that has been presented to the Court. See id.

Generally, where courts have found a promise of progressive discipline prior to termination, that promise has been explicit. For example, in <u>Swanson</u>, the employee manual listed circumstances for which immediate dismissal would be appropriate and then stated "[i]n all other instances of misconduct, at least one warning <u>shall</u> be given." See 118 Wn.2d at 523-24 (emphasis added). In contrast, courts have found that an employer does not make a promise of specific treatment if "the employer retains the discretion to decide what types of offenses will be serious enough to merit immediate dismissal." <u>Drobny</u>, 80 Wn. App. at 105; <u>see also</u> <u>Ritchie</u>, 2007 U.S. Dist. LEXIS 28350, at *13-14. The Court finds that the Guidebook language simply guides the employer's discretion in identifying suitable corrective action; it does not create a promise of progressive discipline in situations that are not specifically enumerated. As a matter of law, plaintiff has not shown an enforceable promise of progressive discipline that could modify her status as an at-will employee.

**3. 2003 Skills Assessment**

In November 2003, defendant initiated a "skills assessment" to evaluate employees. A Power Point presentation distributed to plaintiff noted that "[a]ll colleagues within Resource Management will be assessed, with exception of those that have recently gone through a similar HR-sponsored assessment or selection process such as Field Operations or Resource Managers." See Dkt. #38, P. Ex. 14 (Power Point Presentation). The Power Point presentation also indicated that "[a]ll direct managers for the last two years will be required to provide feedback." Id. Plaintiff asserts that this presentation amounts to "specific promises as to who would be assessed and how they would be assessed." Response at 2. Because plaintiff had undergone a skills assessment earlier that year, she alleges that defendant promised her immunity from assessment but then breached its promise by including her in the skills assessment. After plaintiff was selected for assessment, she claims that defendant breached another promise by failing to solicit feedback from some of her former managers.

The substance of the alleged promises and the manner in which they were conveyed stretch the Thompson exception beyond its limits. To state a cause of action under Thompson, an employee must show that a promise was made in an employee handbook "or similar document." Korslund, 156 Wn.2d at 185. Plaintiff has presented no authority for her proposition that the Thompson exception should be extended from employee handbooks and manuals to a Power Point presentation. To the contrary, subsequent opinions from the Washington State Supreme Court suggest that the Thompson exception to at-will employment should be narrowly construed. See Havens v. C&D Plastics, Inc., 124 Wn.2d 158, 173 (1994) ("where exceptions to the terminable at will rule have been recognized, they have been carefully drawn"). Even if the Court were willing to consider such fleeting statements as a promise of specific treatment under Thompson, neither of the alleged promises relates to termination. The Power Point presentation does not promise that those who were exempt from the 2003 skills

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT           -10-

assessment would be similarly exempt from termination.[2]  Nor does the presentation promise that termination would only take place after certain managers had provided feedback.

In these circumstances, plaintiff could not justifiably rely on the Power Point statements.  In fact, plaintiff admits that she did not believe the language in the Power Point presentation altered her at-will employment status.  Dkt. #25, Ex. A (Rosen Dep.), 114:24-115:2.  She has presented no evidence that the alleged promise induced her "to remain on the job and not actively seek other employment."  See Thompson, 102 Wn.2d at 230.  Despite generally asserting that she "relied" on defendant's promises, plaintiff has presented no evidence that the representations made in the Power Point presentation induced her to change her behavior in any way.  Plaintiff's cause of action cannot be sustained without substantive evidence of reliance.  See Shaw v. Housing Auth. of City of Walla Walla, 75 Wn. App. 755, 761 (1994).

**4. Sarbanes Oxley Project**

In January 2004, plaintiff's manager, Mr. Smith, informed plaintiff that her services were no longer needed in defendant's IT Systems organization, a subset of defendant's larger IT department.  At that time, Mr. Smith encouraged plaintiff to look for another position "anyplace else that [she] wanted."  Dkt. #38, Ex. A (Rosen Dep.), 137:13-24.  He also mentioned that individuals who were not currently working on a project, or were working on an unfunded project, were likely to be selected for layoff.  Id.  Around the time of that conversation, plaintiff received an "Employee Packet" that answered frequently asked questions about impending layoffs.  See Dkt. #38, D. Ex. 14 (Employee Packet).  The packet contains the following question and answer:

> Can I apply for other positions in the Company during the notification period?
>
> Yes.  You are eligible to apply, interview and be considered for other

---

[2] Because plaintiff concedes that she was not a field operations or resource manager, the Court assumes for purposes of summary judgment that plaintiff had been "subject to a similar HR-sponsored assessment or selection process."

1              positions within the Company for which you are qualified.

Id.

In February of 2004, plaintiff interviewed for a position on a Sarbanes Oxley compliance project within the IT department. The Sarbanes Oxley project manager discussed adding plaintiff to the project team, but she did not have actual authority to assign plaintiff to the project. Dkt. #40, Ex. A (Rosen Dep.), 148:5-25; Dkt. #26 (Preuss Decl.), ¶¶2-3. When the project manager asked the company's resource managers to assign plaintiff to the Sarbanes Oxley project team, the request was rejected. Dkt. #26 (Preuss Decl.), ¶3. Plaintiff was prevented from transferring to the Sarbanes Oxley team because she had been selected for layoff. See Dkt. #31 (Smith Decl.), ¶¶6-8.

Plaintiff claims that defendant's representation that she would be eligible "to apply, interview and be considered for other positions within the Company" constituted a promise of specific treatment in specific situations. According to plaintiff, defendant breached this promise by preventing her from joining the Sarbanes Oxley team. Defendant argues that the Employee Packet indicated that plaintiff was eligible to transfer to another "position" within the company, but not to other "assignments" within the IT department. Because the Sarbanes Oxley project was an "assignment" within the IT department, there was no promise that plaintiff could apply, interview or be considered for the Sarbanes Oxley project team.

Neither Mr. Smith's conduct nor the statements in the Employee Packet amounts to a promise of specific treatment. Mr. Smith's verbal assurances cannot create an implied contract sufficient to alter the provisions of plaintiff's express at-will employment agreement. See Lawson, 58 Wn. App. at 264-65. The Employee Packet, which is a written document, lacks the specificity required to create an enforceable obligation under Thompson. Cf. Keenan v. Allen, 889 F. Supp. 1320, 1358-59 (E.D. Wash. 1995) (finding that the statement "[i]f layoff was to occur, the county would, if at all possible, give the employee a thirty day notice" did not amount to a promise of specific treatment). Words like "shall," "must," or "will," which could confer a binding

1  obligation on the employer, are absent.  See Stewart v. Chevron, 111 Wn.2d 609, 613-14
2  (1988).  The Employee Packet language simply advises employees that they have the
3  same application opportunities as individuals outside the company.  As a matter of law,
4  the Court finds that the Employee Packet language is a statement of company policy that
5  did not alter plaintiff's at-will status.[3]

6       Even if defendant made and subsequently breached a promise that plaintiff would
7  be eligible to apply, interview and be considered for positions in the Company, including
8  the Sarbanes Oxley project, plaintiff has failed to show that she relied on such a promise.
9  Although plaintiff asserts that she rejected defendant's severance package because of her
10 interest in a transfer, Response at 15, 22, this cannot be the case.  The events surrounding
11 the Sarbanes Oxley project occurred in February 2004, and plaintiff could not sign and
12 return her severance agreement until her official separation date in March 2004.  See Dkt.
13 #40, Ex. D (Notice of Position Elimination).  Furthermore, nothing in the language of the
14 Employee Packet or the severance agreement prohibited transfer within the company after
15 an employee accepted severance benefits.  Rather, if an employee was offered a new
16 position at the company, she either became ineligible for benefits or was required to
17 return any severance benefits that had already been received.  See id.; Dkt. #38, D. Ex. 14
18 (Employee Packet).  Because plaintiff has not presented the Court with evidence that she
19 justifiably relied on the statements in the Employee Packet, defendant is entitled to
20 summary judgment.

21      For all the foregoing reasons, defendant's motion for summary judgment (Dkt.
22 #24) is GRANTED.  Defendant's motion to strike plaintiff's April 2, 2008 declaration as
23 untimely (Dkt. #42) is GRANTED.  The Clerk of Court is directed to enter judgment for
24 defendant and against plaintiff.

25
26
27
28    [3] Because the Court finds that the language in the Employee Packet does not create a promise of specific treatment, it is unnecessary to consider whether the question and answer refer to a "position" or an "assignment," which goes to the issue of breach.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT     -13-

DATED this 29th day of May, 2008.

*MRS Lasnik*
Robert S. Lasnik
United States District Judge